**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1148**

In Re:  MELVIN STANLEY YATES, II,

Debtor.

----------------------------

MELVIN STANLEY YATES, II,

Plaintiff – Appellant,

v.

THE DISTRICT OF COLUMBIA,

Defendant – Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Roger W. Titus, District Judge.  (8:06-
cv-03199-RWT; BK-03-13176; AP-06-01305)

Argued:  February 1, 2008          Decided:  April 21, 2008

Before MICHAEL and SHEDD, Circuit Judges, and Liam O'GRADY, United
States District Judge for the Eastern District of Virginia, sitting
by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles Elliot Wagner, Washington, D.C., for Appellant.
James Creighton McKay, Jr., OFFICE OF THE ATTORNEY GENERAL FOR THE
DISTRICT OF COLUMBIA, Washington, D.C., for Appellee.  **ON BRIEF:**

Linda Singer, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Edward E. Schwab, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from an adversary proceeding in bankruptcy court. In that proceeding Melvin Yates sought to enjoin the District of Columbia (the D.C. government or District) from enforcing one aspect of a permanent injunction it obtained in D.C. Superior Court. The portion of the injunction at issue prohibits Yates from operating a moving and storage business in the District without first obtaining a $75,000 surety bond for the protection of Yates's future customers. The bond obligation was imposed on Yates as a result of a jury finding that he had violated the D.C. Consumer Protection and Procedures Act while previously operating his business. Yates argues that a bankruptcy discharge he received in 2003 bars the D.C. government from enforcing the surety bond obligation. The bankruptcy court rejected Yates's position, and the district court affirmed. Because we agree that Yates's discharge does not bar the D.C. government from enforcing the surety bond obligation, we affirm.[1]

I.

Beginning sometime prior to 2001 Yates operated a household goods moving and storage business, M.Y. Enterprises, Inc. (MYE), in the District. In June 2001 the D.C. government brought

---

[1]After oral argument in this case Yates filed a motion to strike a Rule 28(j) letter submitted by the D.C. government. In light of our disposition of the case, we deny this motion as moot.

a series of misdemeanor criminal charges against Yates related to his operation of the business. Yates pled guilty to several of these charges in October 2001, for which he received jail time and was ordered to pay $4,195 in restitution and $250 in costs.

In February 2002 the District filed a civil action in D.C. Superior Court against Yates and MYE based on the company's alleged violations of the D.C. Consumer Protection and Procedures Act. On February 26, 2002, the Superior Court issued a preliminary injunction that, among other things, enjoined Yates and MYE from future violations of the Act and required them to obtain a $100,000 surety bond for the benefit of any consumer harmed by their misconduct while "engaged in the business of transporting, moving, warehousing, or storing goods." J.A. 87-88. MYE filed for bankruptcy in March 2002 and stopped operating shortly thereafter.

A year later, on March 19, 2003, Yates filed for bankruptcy in the Bankruptcy Court for the District of Maryland, which granted his discharge in June 2003. The D.C. government then filed an adversary proceeding seeking a determination that certain debts owed by Yates were non-dischargeable under 11 U.S.C. § 523(a)(2), which excepts from discharge debts obtained by fraud, and § 523 (a)(7), which excepts from discharge penalties and fines owed to a governmental unit. Yates, in turn, sought to enjoin the D.C. government from continuing its prosecution of the Superior Court civil action and from enforcing the surety bond obligation

4

imposed in that action. In October 2003 the bankruptcy court entered a preliminary injunction that barred the D.C. government

> from conditioning any license or employment opportunity of Mr. Yates based upon his payment or nonpayment or on the posting of the aforementioned surety bond for the benefit of any consumer injured, as defined in the [Superior Court's] Preliminary Injunction, <u>to the extent such payment, nonpayment, or bond requirement relates to any claims arising prior to March 19, 2003</u>, which have been discharged by the discharge order entered herein unless and until any and all of such claims are determined herein to be nondischargeable.

J.A. 103 (emphasis added). The bankruptcy court's injunction further stated that the D.C. government was not "enjoined from continuing to prosecute" the civil action in Superior Court or from "enforcing the [Superior Court's] Preliminary Injunction . . . as it relate[s] to the posting of a surety bond for the benefit of any consumer injured . . . in regard to a claim against the debtor that has arisen, or may arise, subsequent to March 19, 2003." J.A. 103-104.

In March 2004 the D.C. government entered a stipulation with Yates under which it agreed to dismiss with prejudice its claim in the bankruptcy proceeding that Yates's debts were non-dischargeable under the fraud exception, § 523(a)(2). The stipulation also provided that the government would dismiss without prejudice its claim under the government penalties exception, § 523(a)(7).

Yates then filed a motion in limine in the D.C. Superior Court civil action arguing that the dismissal of the § 523(a)(2)

claims in the bankruptcy court precluded the D.C. government from introducing any evidence of fraud in the Superior Court action. The Superior Court denied this motion in May 2004. J.A. 124-25.

Next, in a July 2004 order the bankruptcy court denied Yates's request to permanently enjoin the Superior Court action and instead allowed that action to go forward subject to the terms of the October 2003 preliminary injunction. The bankruptcy court also stated that whether the relief sought in the civil action was non-dischargeable could be determined after any such relief was actually awarded.

Yates then moved in the bankruptcy court for an injunction barring the introduction of fraud evidence in the D.C. Superior Court action. The bankruptcy court denied the motion, reasoning that the dismissal of the § 523(a)(2) claims did not constitute a determination that no fraud existed, but instead only precluded the D.C. government from arguing that any debt owed by Yates was non-dischargeable under § 523(a)(2). Both the district court and Fourth Circuit affirmed. Yates v. District of Columbia, 139 Fed. Appx. 584 (4th Cir. 2005) (unpublished).

The D.C. Superior Court held a trial in the civil action in November 2004. At trial the D.C. government introduced evidence to show that Yates had engaged in fraudulent activity while operating MYE. This evidence stemmed from incidents that occurred prior to Yates's bankruptcy discharge in 2003, and some of the

6

incidents occurred in Virginia and Maryland rather than in the District. The jury found that on numerous occasions Yates and his company violated the D.C. Consumer Protection and Procedures Act through misrepresentations of material fact. In December 2004 the court awarded the D.C. government a $7,000 civil penalty as well as three forms of equitable relief, which applied against Yates and any moving company under his management or control. First, the court enjoined Yates from engaging in an enumerated set of deceptive business practices, such as making misleading statements to consumers. Second, the court required Yates to make affirmative disclosures to future customers through a prescribed form, which was to be signed by the customers and returned to the D.C. Attorney General. Third, the court required that Yates either refrain from managing or controlling a company in the moving business or obtain, prior to engaging in such business, a $75,000 surety bond. The order stated that the terms of the surety bond must allow execution by either the D.C. government or any injured consumer upon proof that Yates, after the date of the judgment, made material misrepresentations to consumers.

In January 2006 the D.C. Superior Court held Yates in contempt for violating the December 2004 injunction. The court found that Yates was managing and controlling WorldWide Moving and Storage, Inc., a company engaged in the moving business. The court further found that Yates and WorldWide had neither made the

7

affirmative disclosures nor obtained the surety bond required by the injunction.

Yates then filed this adversary proceeding alleging that his bankruptcy discharge barred the D.C. government from enforcing the $75,000 surety bond obligation imposed by the D.C. Superior Court.  The bankruptcy court rejected all of the arguments Yates advanced in support of his position, and the district court affirmed.  Yates now appeals.

## II.

Yates's primary contention on appeal is that 11 U.S.C. § 524(a) barred the Superior Court from imposing the $75,000 surety bond obligation in November 2004.  That statute bars any entity from seeking to collect a debt that has previously been discharged in bankruptcy.  11 U.S.C. § 524(a).  According to Yates, the $100,000 bond obligation imposed in February 2002 qualifies as a "debt" within the meaning of the Bankruptcy Code and, thus, was discharged when his bankruptcy discharge was granted in June 2003.  In Yates's view, the $75,000 bond obligation imposed in November 2004 violates § 524(a) because it is tantamount to a reimposition of the (discharged) $100,000 bond obligation imposed in February 2002.

This argument lacks merit.  As an initial matter, we are not certain that the initial surety bond obligation qualifies as a

8

"debt" within the meaning of the Bankruptcy Code, given that Yates is not required to secure the bond if he refrains from engaging in the moving business.  See 11 U.S.C. § 101(12) (defining "debt"); see also FCC v. NextWave Personal Communications, Inc., 537 U.S. 293, 302-04 (2003) (interpreting definition of "debt").  But we need not answer that difficult question here because the surety bond obligation imposed by the December 2004 permanent injunction differs in important ways from the obligation imposed by the preliminary injunction.  That fact alone is a sufficient reason to reject Yates's argument that the D.C. Government has run afoul of § 524(a) by impermissibly seeking to reimpose a discharged debt.

The key difference between the two surety bond obligations is that the November 2004 obligation is narrowly focused on protecting consumers from future misconduct, whereas the February 2002 obligation is broader in that it seeks to provide compensation for past injuries as well.  The Superior Court's November 2004 injunction makes clear that an injured party (or the D.C. government) may execute on the bond based on proof that Yates engaged in business misconduct "after the effective date of [the court's] Order."  J.A. 183.  The February 2002 bond obligation had no such restriction and was structured in a way that allowed for compensation to past victims of Yates's misconduct.  In fact, the bankruptcy court has previously recognized the retrospective aspect of the February 2002 surety bond obligation when, in  October 2003,

9

it enjoined the Superior Court from enforcing the bond obligation with respect to payment for claims arising prior to the date of Yates's discharge.

This key distinction demonstrates that the November 2004 surety bond obligation is not simply a reimposition of the prior February 2002 obligation. In other words, even if we assume the February 2002 obligation was a debt that was discharged in Yates's bankruptcy, § 524(a) barred the D.C. government only from reimposing a similar obligation geared to compensating victims of Yates's past misconduct. We see no warrant for interpreting § 524(a) in a way that prohibits the D.C. government from seeking to impose a prospective surety bond obligation designed as protection for future consumers.

Yates repeatedly invokes the bankruptcy code's "fresh start" policy to support the argument that his discharge should prevent the D.C. government from enforcing the surety bond obligation against him. See Marrama v. Citizens Bank of Mass., 127 S. Ct. 1105, 1107 (2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" (quoting Grogan v. Garner, 498 U.S. 279, 286, 287 (1991))). But the "fresh start" policy does not imply that a discharge in bankruptcy allows a debtor to be excused from all consequences of his past misconduct. Indeed, the bankruptcy code's "fresh start" principle is limited by the concept that "discharge

10

in bankruptcy is not intended to be a haven for wrongdoers." U.S. Dept. of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927 (4th Cir. 1995). Yates's pre-bankruptcy misconduct in operating his business landed him in serious trouble and resulted in both civil and criminal judgments against him. Had the D.C. government sought the more drastic remedy of permanently enjoining Yates from operating a moving business within its borders, the bankruptcy code surely would have provided Yates no solace. Likewise, nothing in the bankruptcy code bars the D.C. government from imposing the lesser sanction at issue in this case.[2]

III.

Yates next argues that the D.C. Superior Court erred in the civil action by allowing two of Yates's former customers to testify regarding moves that occurred outside of the District. Yates argues that these extra-jurisdictional transactions can not be relevant in determining whether Yates violated the D.C. Consumer Protection and Procedures Act and that basing a penalty on the admission of such evidence would violate the federal constitution.

_____

[2]Yates also argues that imposition of the surety bond obligation violates the Ex Post Facto Clause of the Constitution and other provisions of federal law. We decline to address these issues, which may be properly addressed in the D.C. court proceedings. See Yates v. District of Columbia, 445 F.3d 422 (D.C. Cir. 2006) (holding that Younger abstention barred federal court consideration of similar arguments made by Yates).

11

The D.C. Superior Court ruled that the testimony was admissible, and Yates has appealed to the D.C. Court of Appeals. See Yates v. District of Columbia, Nos. 05-CV-29 & 06-CV-96 (D.C. argued April 12, 2007).

We conclude that our consideration of Yates's arguments, which were first raised in the federal courts after the D.C. Superior Court denied his motion to exclude the extra-jurisdictional evidence, is foreclosed by the Rooker-Feldman doctrine. That doctrine generally prohibits a party who loses on an issue in state court from later seeking what in substance would be appellate review in the federal courts. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005). Yates argues that there is an exception to the doctrine that allows a federal bankruptcy court to enjoin a state court action that would violate the § 524(a) statutory injunction prohibiting actions to seek payment for a discharged debt. See In re Gruntz, 202 F.3d 1074, 1084 (9th Cir. 2000) ("Rooker-Feldman does not allow a state court to interfere with the core administrative functions of an operative bankruptcy."). Even assuming that such an exception exists, it does not apply here. As we concluded in part II, the D.C. government did not violate § 524(a) by seeking (and obtaining) a permanent injunction that imposed a prospective surety bond obligation on Yates. Therefore, we lack jurisdiction to review the merits of the D.C. Superior Court's evidentiary ruling.

12

IV.

Finally, Yates renews his argument that the bankruptcy court should have barred the D.C. Superior Court from admitting any evidence of fraud in the civil action against him. This argument is based on the theory that the D.C. government's dismissal with prejudice of its § 523(a)(2) claims in the bankruptcy court precludes the government from arguing that Yates engaged in any fraudulent activities. Yates is barred from relitigating this issue, which our court has previously decided. See Yates v. District of Columbia, 139 Fed. Appx. 584 (4th Cir. 2005) (unpublished).

\* \* \*

For the reasons stated above, the judgment of the district court is

AFFIRMED.

13