# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 10, 2009  Decided December 15, 2009

No. 08-7098

ACT NOW TO STOP WAR AND END RACISM COALITION AND
MUSLIM AMERICAN SOCIETY FREEDOM FOUNDATION,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01495)

———

*Carl Messineo* argued the cause for appellants. With him
on the briefs was *Mara Verheyden-Hilliard.*

*David A. Hyden*, Assistant Attorney General, Office of
the Attorney General for the District of Columbia, argued the
cause for appellee. With him on the brief were *Peter J.
Nickles*, Attorney General, *Todd S. Kim*, Solicitor General,
and *Donna M. Murasky*, Deputy Solicitor General.

Before: GARLAND, *Circuit Judge*, and WILLIAMS and
RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Plaintiff-appellants Act Now to Stop War and End Racism Coalition ("ANSWER") and Muslim American Society Freedom Foundation brought this action claiming that certain regulations of the District of Columbia Department of Transportation, governing the placement of posters in the District, violated the First Amendment and the Due Process Clause (presumably that of the Fifth Amendment, though plaintiffs do not say). The district court dismissed the suit, finding that the Foundation lacked standing to challenge the regulations because its alleged injury amounted at most to "subjective 'chill.'" *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 570 F. Supp. 2d 72, 77-78 (D.D.C. 2008) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). As to ANSWER, the district court abstained under *Younger v. Harris*, 401 U.S. 37 (1971), because the District has brought charges against ANSWER—now pending before the District of Columbia Office of Administrative Hearings—for violating aspects of the postering regulations it seeks to challenge in this suit. 570 F.Supp. 2d at 74-75. We hold that the Foundation's allegations are adequate to support standing. The *Younger* issue is more complex, but in the end we conclude that a remand of ANSWER's claim is also in order.

The challenged regulations impose various limitations on individuals or groups that wish to affix noncommercial posters on public lampposts in the District. They provide that no more than three versions of each poster may be affixed on one side of a street block, D.C. Mun. Regs. tit. 24, § 108.10; that copies of posters and the name, address, and telephone number of the originator must be filed with the District shortly after posting, *id.* § 108.11; and that posters cannot be affixed

by means that prevent their complete removal or that damage the fixture, *id.* § 108.9, which we'll call the "adhesive rule."

When ANSWER and the Foundation filed this suit, the regulations also required that most signs be removed within 60 days of posting, but imposed no time limit on "[s]igns designed to aid in neighborhood protection from crime"; the regulations also allowed political candidates seeking public office in the District to post signs at any time before the election as long as they removed signs within 30 days following the general election. *Id.* §§ 108.5, 108.6. Signs had to bear the date of posting, *id.* § 108.7, presumably to aid enforcement of these time limits. Shortly before this appeal was argued, the District's Department of Transportation issued an emergency rulemaking repealing the exemptions for political candidates and signs relating to "neighborhood protection from crime." Under rules substituted on an interim basis, all signs on public lampposts must be removed after 60 days, unless they are "related to a specific event," in which case they may be affixed any time prior to the event but must be removed within 30 days following the event. Notice of Emergency and Proposed Rulemaking, 56 D.C. Reg. 8759, 8759 (Nov. 6, 2009). The notice of rulemaking said that the purpose of the amendments was to remove the time limit distinction between political and non-political advertising "that has raised First Amendment concerns." *Id.*

Plaintiffs' principal claim before the district court was that the time limits in the original postering regulations impermissibly discriminated on the basis of content, by imposing shorter time limits for speech not related to political campaigns or crime prevention. They also claimed that the size of the penalties (fines of up to $2000 per violation, see D.C. Mun. Regs. tit. 24, § 1380.1; *id.* § 1312.1(a)), and what they characterize as the regulations' "strict liability" nature, chilled constitutionally protected speech; that liability for

failure to print the date on which the sign was posted served no legitimate governmental interest; and that the regulations were vague and overbroad, and invited arbitrary application. They sought a declaration that the regulations were unconstitutional, an injunction against their enforcement, and attorneys' fees.

The district court found that the Foundation lacked standing to challenge the regulations because it did "not allege that it has planned to undertake any action which may violate the District's postering regulations." 570 F. Supp. 2d at 78. But the Foundation had submitted an affidavit from its executive director stating that the Foundation "seeks to engage in postering . . . to the same extent as is afforded others, including those favored within the existing District of Columbia municipal regulation system," and moreover that it "must currently refrain from posting materials on public lampposts . . . in the same manner and with the same freedom as is allowed those whose speech pertains to neighborhood crime or whose speech supports a candidacy for elected office." We read this affidavit as plainly indicating an intent to engage in conduct violating the 60-day limit—but for the existence of the regulations.

While "subjective 'chill' alone will not suffice to confer standing on a litigant bringing a pre-enforcement facial challenge to a statute allegedly infringing on the freedom of speech," *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992), imminent threats commonly suffice. We implied in *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005), that standing to challenge laws burdening expressive rights requires only "a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law." *Id.* at 1253. Allowance of standing in such a case appeared essential to reconcile our decision in *Navegar, Inc. v. United*

5

*States*, 103 F.3d 994 (D.C. Cir. 1997), on the one hand, with *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), and many like standing cases, on the other. *Seegars*, 396 F.3d at 1251-54; see also *Ord v. District of Columbia*, No. 08-7094, 2009 WL 4408200, at *13 (D.C. Cir. Dec. 4, 2009) (noting that *Navegar* imposes a more demanding standard than *United Farm Workers*). As in *Navegar*, the *Seegars* plaintiffs posed a "preenforcement challenge[] to a criminal statute *not* burdening expressive rights and not in the form of appeal from an agency decision," 396 F.3d at 1253 (emphasis added), so *Navegar*'s more demanding rule applied, *id.* at 1253-54.

But here we are confronted with a challenge to a state regulation that *is* claimed to burden expressive freedom, a credible statement of intent to engage in violative conduct, and somewhat more than the "conventional background expectation that the government will enforce the law." 396 F.3d at 1253. The District has in fact brought an enforcement action against ANSWER for violations of the postering rules. And the affidavit by the Foundation's executive director plainly qualifies, at the stage of a motion to dismiss, as "a credible statement . . . of intent to commit violative acts." *Seegars*, 396 F.3d at 1253; cf. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). We therefore must remand the Foundation's claims for further consideration.

With respect to ANSWER, the district court reasoned that *Younger* abstention was appropriate because of ANSWER's involvement in administrative hearings before the District, in which it can raise its federal constitutional claims as defenses. 570 F. Supp. 2d at 75. *Younger* abstention is appropriate only

when several requirements are met: "[F]irst, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford an adequate opportunity in which to raise the federal claims." *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 425 (D.C. Cir. 2006) (quoting *Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (internal quotation marks omitted)). Moreover, the state proceeding must be "the type of proceeding to which *Younger* applies," *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367 (1989), which normally means "state criminal prosecutions" or "civil enforcement proceedings," *id.* at 368.

We agree that ANSWER has failed to show that it does not have a "full and fair opportunity to litigate [its] constitutional claim" against the adhesive rule in the administrative hearings, so the district court appropriately abstained as to that challenge. Cf. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1121 n.10 (D.C. Cir. 2004). Nonetheless, *Younger* abstention would be improper to the extent that ANSWER's suit challenges the constitutionality of other postering regulations that ANSWER has not been accused of violating, *so long as* the invalidity of the challenged regulation would not, presumably through inseverability, imply the invalidity of any regulation that ANSWER *has* been accused of violating. Conversely, abstention is required as to any requested federal court relief that would foreclose the District's consideration of the same issues in its civil enforcement proceedings. Cf. *Trainor v. Hernandez*, 431 U.S. 434, 445 (1977) (relying, in application of *Younger* abstention, on concern that nonabstention would "foreclose the opportunity of the state court to construe the challenged statute in the face of the actual federal

constitutional challenges that would also be pending for decision before it").

Thus, consistent with *Younger*, ANSWER may raise constitutional challenges in federal district court that are completely independent of and severable from the violations it is facing in the District's administrative proceedings. In such a suit, not only would the court and the District's Office of Administrative Hearings be addressing entirely distinct regulations, but there would be no way in which the court's decision could preempt the activity of the District's institutions.

Two aspects of this issue are obscure on the record before us. First, so far as severability is concerned, we do not think it appropriate for a court, except perhaps in the most obvious case, to rule on the remedial issue of severability in advance of deciding the merits. But we see no reason why a party could not solve the problem by making a binding disclaimer of any inseverability argument. At oral argument, ANSWER's counsel appeared under intensive questioning to make such a disclaimer, though only after an array of statements seeming to assert inseverability. While ANSWER's complaint has rather a blunderbuss quality, it appears principally concerned with the non-application of the 60-day time limits to certain kinds of speech, under the regulations as they existed when ANSWER filed suit, whereas the proceedings in the Office of Administrative Hearings appeared to revolve solely around the adhesive rule. So long as ANSWER's constitutional attack in federal court relates entirely to a regulation (or regulations) not at all involved in the Office of Administrative Hearings, and is entirely severable, there is no occasion for abstention.

But—the second obscurity—it is unclear what regulations are at stake both in the federal lawsuit and in the District's

proceedings. See Compl. ¶¶ 31-32 (alleging that "[t]he District's strict liability scheme . . . creates an unconstitutional and severe chilling effect on free speech"); *id.* ¶ 39 (alleging that the "registration requirements . . . violate[] the protected right to engage in anonymous speech"); *id.* ¶ 40 (alleging that the requirement that posters bear the date on which they were posted "serves no legitimate interest apart from the unconstitutional duration limitations"); *id.* ¶ 42 ("The regulations are unconstitutionally vague."); *id.* ¶ 44 ("The regulations burden substantially more speech than necessary to advance any legitimate government interest."). As to the District's proceedings, its counsel represented before us that it had charged ANSWER with violations of several provisions besides the adhesive rule, including the regulations requiring that the date of posting be written on the poster and that posters must be filed with the District, and limiting to three the number of posters in a single street block. But District counsel said that these citations were "outside the record," and counsel for ANSWER could not clearly confirm or deny the existence of charges other than those under the 60-day rule.

Because ANSWER in the district court made no suggestion of foreswearing inseverability, we would normally have no basis for reversing the district court's decision. But as it appears to have done so in oral argument, and as the case must be remanded in any event on the Foundation's claim, we think it appropriate to reverse and remand the judgment on ANSWER's claim so that the parties may supplement the record to lay an accurate basis for resolution of the *Younger* abstention issue.

The judgment of the district court is therefore

*Reversed and remanded*.