# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 16, 2009　　　　Decided February 26, 2010

No. 09-7035

ROSE RUMBER, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA AND NATIONAL CAPITAL
REVITALIZATION CORPORATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01170-RMU)

*Elaine Mittleman* argued the cause and filed the briefs for appellants.

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: SENTELLE, *Chief Judge*, WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: Seventeen plaintiffs brought suit to prevent the District of Columbia from acquiring a shopping center by eminent domain.  Because only four of the plaintiffs own or lease properties in the shopping center, and those four are litigating this matter in the District of Columbia's court system, we affirm the district court's dismissal of the case.

\* \* \*

The Skyland Shopping Center is located at the junction of Alabama Avenue, Good Hope Road, and Naylor Road in Southeast Washington, D.C.  According to findings of the District of Columbia Council, the shopping center is in disrepair, is underutilized, contributes to crime, is an eyesore, presents traffic hazards, does not provide quality shopping, and is a "blighting factor" in the neighborhood.  *See* National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act, D.C. Law 15-286, 52 D.C. Reg. 859 (2004) (the "Skyland Act").  In 2004, the Council authorized the National Capital Revitalization Corporation – a District agency – to acquire the properties comprising the shopping center by purchase or eminent domain. The District planned to transfer the land to a private company that would redevelop the area into a better shopping center with the attendant public benefits of increased revenue, jobs, and high quality shopping.

Plaintiffs are current and former Skyland property owners, tenants, and employees who oppose the District's plan.  They brought suit in federal court shortly after the Council passed the Skyland Act, alleging that the proposed takings were intended to benefit the private developer rather than the public and thus violated the Takings Clause of the Fifth Amendment.  They

sought a judgment declaring the Act unconstitutional and enjoining the District from exercising eminent domain to acquire the shopping center. They also requested damages. After the district court denied plaintiffs' motion for a preliminary injunction, the District initiated a series of condemnation proceedings in the District of Columbia Superior Court against Skyland parcels. One of these proceedings was brought against property owned by plaintiff Duk Hea Oh; another was brought against property owned by plaintiff Peter DeSilva and leased by plaintiffs Joseph and Rose Rumber. In light of these proceedings, the district court dismissed the claims of Oh, DeSilva, and the Rumbers under the principle of abstention articulated in *Younger v. Harris*, 401 U.S. 37 (1971). The court dismissed as moot the claims of three other plaintiffs (Graham Fields, Verna Fields, and Ingak Lee) who had sold their property to the District. As to the remaining plaintiffs, the court granted summary judgment in the District's favor, finding that the District passed the Skyland Act to further a public purpose and therefore the Act did not violate the Takings Clause.

All seventeen plaintiffs now appeal, but thirteen plaintiffs' claims are barred by the doctrines of mootness or standing. Four plaintiffs (Graham Fields, Verna Fields, Ingak Lee, and In Suk Baik) sold their property to the District and three others (Marion Fletcher, Hartej Singh, and Muneer Choudhury) are former leaseholders whose leases expired or terminated without being condemned. These plaintiffs have "nothing to gain" from an injunction against the use of eminent domain or a judgment declaring the Skyland Act unconstitutional; their claims are therefore moot. *See Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995).[1] Three other plaintiffs (Quval Le,

---

[1] These plaintiffs argue that the complaint also includes claims for compensatory damages, which are not capable of being moot. *See People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d

Moon Kim, and Son Cha Kang) are also former leaseholders whose leases are no longer in effect. They argue that their claims are not moot because the District, having acquired the property that they previously leased, allows them to continue to operate their businesses under month-to-month license agreements.[2] But because the District will not need to use the eminent domain power when it wishes these plaintiffs to vacate, their claims are moot as well.

Three other plaintiffs lack standing because they do not hold property interests in the shopping center. Plaintiffs Ling Chen and Boubaker Ben Salah are or were employees of businesses operating at the shopping center, and plaintiff Mukhtar Ahmadi holds an unspecified ownership stake in a business that leases a store at the shopping center. A plaintiff must ordinarily "assert his own legal interests, rather than those of third parties." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *Goodman v. FCC*, 182 F.3d 987, 992 (D.C. Cir. 1999). A plaintiff may assert the rights of a third party only when there is "some hindrance to the third party's ability to protect his or her own interests," *Goodman*, 182 F.3d at 992 (*quoting Powers v. Ohio*, 499 U.S. 400, 411 (1991)). The property-owning businesses, not their employees or stakeholders, are the proper parties to bring suit opposing

---

416, 425 (D.C. Cir. 2005). Because no property has been taken from these plaintiffs, however, we see no basis on which they may collect damages.

[2]    In supplemental briefing, the District provided us with these license agreements. Each agreement contains a clause releasing the District "from and against any and all actions, causes of action, suits, debts, contracts, claims and/or demands pertaining to or arising from Licensee's occupancy of the Premises prior to the date hereof." Plaintiff Baik also signed a similar license agreement, with an identical release clause, after selling his property to the District.

condemnation.

That brings us to the district court's decision to abstain under *Younger* with respect to the claims of the four condemnees. The *Younger* principle, as it has been shaped by a series of Supreme Court precedents, is that a federal court should not enjoin or declare illegal a pending state proceeding that is judicial in nature and involves important state interests, *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004), assuming that the state proceeding is "the type of proceeding to which *Younger* applies," *Act Now to Stop War and End Racism Coalition v. District of Columbia*, 589 F.3d 433, 436 (D.C. Cir. 2009) (*quoting New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 348, 367–68 (1989)). The condemnees do not dispute that the general rule of *Younger* applies here, but rather argue that they fall within either of two exceptions to *Younger*. A federal court should not abstain if the federal plaintiff does not have a "full and fair opportunity to litigate" his constitutional claims in the state proceedings, *id.* (*quoting Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986)) or if there is a showing of "bad faith" by the officials bringing the state proceedings, *see Trainor v. Hernandez*, 431 U.S. 434, 442 n.7 (1977) (*citing Younger*, 401 U.S. at 54). Neither exception applies.

The condemnees claim that the Superior Court deprived them of a fair litigation opportunity by ruling – in both condemnation actions – that the condemnees forfeited their constitutional defenses by failing to plead them. The condemnees did not provide, either to this court or the district court, copies of the relevant Superior Court pleadings or the forfeiture rulings. Nor did their briefs explain the rulings in any detail, leaving us unable to evaluate their fairness. But it does not matter anyway, because, as these plaintiffs acknowledge, the

District of Columbia Court of Appeals shortly thereafter issued an opinion in a similarly-situated Skyland condemnation case that overturned those forfeiture rulings. *See Franco v. Nat'l Capital Revitalization Corp.*, 930 A.2d 160, 166–70 (2007). Indeed, in the DeSilva/Rumber case, the Superior Court took note of the *Franco* decision, reversed its forfeiture ruling, and rejected the public use argument on the merits. We have no idea what happened in the Oh case after the *Franco* ruling because the briefs are silent on this matter as well. It was Oh's obligation to bring the *Franco* opinion to the Superior Court's attention in a motion for reconsideration, and, in the absence of any indication that she has done so, we do not simply assume that the Superior Court would have rebuffed her. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15–16 (1987). In short, we have no basis on which to believe that any of the condemnees were deprived of a fair opportunity to raise their constitutional defenses in Superior Court.

As to "bad faith," the Rumbers complain that the District did not join them as defendants in the DeSilva condemnation action for approximately two years after the District filed the condemnation complaint. This was bad faith, according to the Rumbers, because Superior Court rules require immediate joinder of all parties known to hold property interests. *See* Super. Ct. Civ. R. 71A(c)(2). The Rumbers accuse the District of knowing of their leasehold interest at the time of the initiation of the condemnation suit and deliberately delaying joining them as defendants. We cannot help but wonder what possible advantage the District hoped to gain through this strategy, or how the delay has prejudiced the Rumbers. The Rumbers were obviously on notice of the condemnation action because they have been suing to enjoin it since it began. We therefore agree with the district court that there was no bad faith.

Though we imagine that plaintiffs could have raised other arguments against abstention,[3] we follow our usual practice of declining to reverse the district court based on arguments that the appellant did not raise. *See Doe v. District of Columbia*, 93 F.3d 861, 875 n.14 (D.C. Cir. 1996) (per curiam). Accordingly, we affirm the district court's dismissal of plaintiffs' Fifth Amendment claims. We also affirm the court's disposition of plaintiffs' contract and Uniform Relocation Assistance Act claims, which are so clearly meritless that they do not warrant discussion.

*Affirmed.*

---

[3] For example, plaintiffs never argued that abstention was unwarranted with respect to the Rumbers because "proceedings of substance on the merits ha[d] taken place in the federal court" before the District joined the Rumbers in the DeSilva condemnation suit. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984). Had plaintiffs done so, the District presumably would have responded that the Rumbers' interests were sufficiently intertwined with DeSilva's such that their late joinder would not be a bar to abstention. *See Hicks v. Miranda*, 422 U.S. 322, 348–49 (1975); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928–29 (1975). Nor did plaintiffs argue that condemnation is not "the type of proceeding to which *Younger* applies." *Act Now to Stop War and End Racism Coalition*, 589 F.3d at 436.