# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 16, 2015          Decided July 17, 2015

No. 14-7042

BARBARA FOX,
APPELLANT

v.

GOVERNMENT OF THE DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-02118)

———

*Caleb S. Fox* argued the cause and filed the briefs for appellant.

*James C. McKay Jr.*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Eugene A. Adams*, Interim Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: ROGERS and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Barbara Fox filed an action under 42 U.S.C. § 1983 alleging that a police officer violated her Fourth Amendment right when, during her husband's traffic stop and arrest, the officer ordered her to get out of the car and put her hands on the hood. The district court granted the police officer's motion for judgment on the pleadings because the factual allegations in the complaint do not plausibly suggest that the officer violated Mrs. Fox's clearly established Fourth Amendment right. We affirm the judgment.

I.

For the purposes of this appeal, we accept as true the facts alleged in the complaint. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1273 (D.C. Cir. 1994).

Around 5:00 p.m. on Saturday, December 20, 2008, Hamilton P. Fox III drove his wife to a pharmacy. While she went in to pick up medication, Mr. Fox "remained in his standing and running vehicle" near a sign reading "No Parking / Loading Zone / For Commercial Vehicles Only / 7:00 a.m. to 6:30 p.m. / Monday – Saturday" and another sign reading "No Standing or Parking Anytime." Second Am. Compl. ¶¶ 25–26, *Fox v. District of Columbia*, 924 F. Supp. 2d 264 (D.D.C. 2013) (No. 10-2118) ("SAC"). Shortly after Mr. Fox stopped his car, Metropolitan Police Department Officer Brett L. Squires pulled up in a marked police car and told Mr. Fox that he could not park there. Mr. Fox claimed he

3

was not parking—he was simply "standing while waiting for his wife." *Id.* ¶ 29. "Gotta move your car, Sir," Officer Squires replied. *Id.* ¶ 30. Mr. Fox became "incredulous" and "asked to speak with a supervisor to discuss the matter." *Id.* ¶ 31. Officer Squires told Mr. Fox to wait on the sidewalk.

Mr. Fox waited for about fifteen minutes. Eventually, Mrs. Fox returned, asked what was going on, and got into the car. Mr. Fox then got back into his car and attempted to leave, but Officer Squires stopped him. Officer Squires explained that, because Mr. Fox asked to speak with a supervisor, he needed to wait for a supervisor to arrive. Shortly thereafter, several "police officers swarmed the scene." *Id.* ¶ 35.

While police officers arrested her husband, Mrs. Fox got out of the car to ask what was happening. She was ordered to get back into the car, and she complied. When Metropolitan Police Department Officer Alfred L. Boyd approached the car, Mrs. Fox again asked what was happening. "Shut up," responded Officer Boyd. *Id.* ¶ 42. For a third time, Mrs. Fox asked what was happening, and Officer Boyd told her "if he had to tell her to shut up again, he would arrest her." *Id.* "Mrs. Fox started crying, and asked why she could not ask a question." *Id.* ¶ 43. Officer Boyd then ordered her out of the car and told her to put her hands on the hood. Mrs. Fox complied. Another police officer asked Mrs. Fox for her driver's license to see if there were any outstanding warrants or issues. Finding none, he returned the driver's license and let Mrs. Fox leave.

Mr. and Mrs. Fox brought a civil action for damages under § 1983 against the District of Columbia and Officers Squires and Boyd in their individual capacities. Under

Count 1, the only cause of action relevant to this appeal, Mrs. Fox alleged that Officer Boyd violated her "well-established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures" when he "stopp[ed] and detain[ed]" her. *Id.* ¶ 55.

Officer Boyd moved for judgment on the pleadings for Count 1, arguing that he is protected by qualified immunity. The district court explained, to overcome Officer Boyd's claim to qualified immunity, Mrs. Fox needed to establish that: (1) Officer Boyd's conduct violated her constitutional right; and (2) "the 'right at issue was clearly established at the time of [Officer Boyd's] alleged misconduct.'" *Fox*, 924 F. Supp. 2d at 269 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). The district court held that Mrs. Fox satisfied neither requirement. "[T]he factual allegations in the complaint do not plausibly suggest that [Officer Boyd] violated Mrs. Fox's clearly established Fourth Amendment rights." *Id.* at 266–67.

Based on the allegations in the complaint, Mr. Fox violated at least one District of Columbia traffic regulation when he parked his car in a commercial loading zone. *Id.* at 270 (citing D.C. Mun. Regs. Tit. 18, § 2402). Because Officer Squires could have issued a notice of infraction for the violation, the district court explained that "Officer Squires was legally permitted to detain Mr. Fox—and his passenger Mrs. Fox—while he addressed the situation." *Id.* at 271. "In this case," the district court noted, "Mrs. Fox admit[ted] that she became progressively more upset as [the officers] arrested her husband," and that she "attempted to get out of the car, kept asking what was happening, and ultimately started crying." *Id.* (footnote omitted). Under these circumstances, the district court concluded that Officer Boyd, "[i]n response to [Mrs. Fox's] escalating emotional state, . . . lawfully

ordered her to get out of the car and place her hands on the vehicle in order to protect himself and the other officers on the scene and to prevent her from interfering with their arrest of Mr. Fox." *Id.* (citing *Rogala v. District of Columbia*, 161 F.3d 44, 45 (D.C. Cir. 1998)).

Holding that Officer's Boyd's brief detention of Mrs. Fox did not violate her clearly established Fourth Amendment right, the district court granted Officer Boyd's motion for judgment on the pleadings as to Count 1. *Id.* at 271–72. Mrs. Fox timely appealed.

## II.

We review a district court's grant of a motion for judgment on the pleadings "de novo, taking the complaint's factual allegations as true." *Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014).

The doctrine of qualified immunity protects police officers "from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks and citation omitted). To overcome Officer Boyd's claim to qualified immunity, we need to determine: (1) whether Mrs. Fox alleged facts showing a violation of a constitutional right; and, if so, (2) whether the constitutional right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232 (summarizing the two-step analysis mandated by *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In *Pearson*, the Supreme Court modified *Saucier*'s two-step analysis, declaring that the sequence of the two steps

"should not be regarded as an inflexible requirement." 555 U.S. at 227; *see also Plumhoff v. Rickhard*, 134 S. Ct. 2012, 2020 (2014) (same). Instead, lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Given the circumstances of this particular case, we begin and end our analysis with the second requirement.

At a minimum, Officer Boyd contends that he is entitled to qualified immunity because Mrs. Fox's opening brief fails to "argue that her right not to be seized in these particular circumstances was 'clearly established,' let alone identify what decisions of the Supreme Court or the courts of appeals clearly established that right." Appellee's Br. 25. We agree and thus conclude that Mrs. Fox forfeited this argument. In her reply brief, Mrs. Fox explains that her opening brief included several citations to cases, which, in her view, show that her Fourth Amendment right was clearly established when Officer Boyd seized her. *See* Reply Br. 11–13 (listing *Maryland v. Wilson*, 519 U.S. 408 (1997); *Whren v. United States*, 517 U.S. 806 (1996); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam); and *Terry v. Ohio*, 392 U.S. 1 (1968)). Yet, Mrs. Fox never argued in her opening brief that any of these cases (standing alone or read together) clearly established a Fourth Amendment violation under the circumstances of her seizure. And critically, she made no effort to identify the "contours of the right" at issue, let alone in a manner that would make it "clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (internal quotation marks and citation omitted). As a result, she forfeited the argument. *City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003) (per curiam) (argument inadequately raised in an

opening brief is waived); *see also Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (argument first appearing in a reply brief is forfeited).

Even if we were to reach the merits, it is not at all clear that Mrs. Fox could prevail. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable [police officer] would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011). The merits question would be whether, given the circumstances of her alleged seizure, Mrs. Fox's Fourth Amendment right was "clearly established by prior case law" when Officer Boyd ordered her to get out of the car and put her hands on the hood during her husband's traffic stop. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quotation marks omitted).

Some prior case law at least arguably supports Officer Boyd's position that it was not clearly established. For example, a police officer can order the driver and any passengers to get out of the vehicle during a lawful traffic stop, *see Wilson*, 519 U.S. at 415; *Mimms*, 434 U.S. at 111, without any "cause to believe any occupant of the vehicle is involved in criminal activity," *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Moreover, the subjective intentions of the officer cannot invalidate the officer's "objectively justifiable behavior under the Fourth Amendment." *Whren*, 517 U.S. at 812. Mrs. Fox in her opening brief has neither cited nor discussed any cases suggesting that Officer Boyd's actions were objectively unreasonable given the circumstances of her alleged seizure. Officer Boyd, on the other hand, suggests

that ordering Mrs. Fox to get out of the car during her husband's arrest was a reasonable precautionary measure. Appellee's Br. 21–22 (discussing *Rogala*, 161 F.3d at 47–54, and *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997)).

Conversely, Mrs. Fox's position is far from being without support. Each of the above cases which might support the officer's position is to some degree distinguishable. Among other potential issues, the Supreme Court has made clear that "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614–15 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Certainly, a plausible argument can be made that the officer's conduct in the present case crossed that constitutional line. That, however, is not good enough to pierce the officer's claim of qualified immunity. Under *Saucier* and *Pearson* and their progeny, the piercing requires a violation of a constitutional right clearly established at the time of the incident. Not only has Mrs. Fox not established that her right not to be seized in the circumstances of this case was "clearly established," she did not even argue this matter in her opening brief. As also noted above, where a litigant has forfeited an argument by not raising it in the opening brief, we need not reach it. In short, we need not decide the constitutional issue because Mrs. Fox has not properly brought it before us.

Given the circumstances of Mrs. Fox's alleged seizure, nothing in her brief shows that existing precedent has placed her Fourth Amendment right beyond debate. *See Al-Kidd*, 131 S. Ct. at 2083. Consequently, Mrs. Fox has not shown that Officer Boyd violated her clearly established Fourth Amendment right when he ordered her to get out of the car

and put her hands on the hood during her husband's traffic stop.

* * *

We affirm the district court's judgment in favor of Officer Boyd.

*So ordered.*